# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **NEIL J. LOFQUIST, #M-04121,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 20-169-RJD |
| ) | |
| **HEATHER CECIL,** ) | |
| **DEEDEE BROOKHART,** ) | |
| **and JOHN/JANE DOE (Mailroom** ) | |
| **Employee),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Neil J. Lofquist, a state prisoner currently incarcerated at Lawrence Correctional Center ("Lawrence") in the Illinois Department of Corrections ("IDOC"), filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Docs. 1, 12). Plaintiff asserts that during his confinement at Lawrence, Defendants have interfered with his incoming mail by rejecting or losing books and personal correspondence, hindered his outgoing mail, and overcharged him for postage. He seeks injunctive and declaratory relief and monetary damages. (Doc. 12, pp. 11-13).

This case is now before the Court for a preliminary merits review of the First Amended Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Plaintiff makes the following allegations in the First Amended Complaint: In May and September 2019, Plaintiff's uncle mailed books to Plaintiff packaged in cardboard boxes and/or padded envelopes. Mailroom Staff returned the books to the sender because the packaging ran afoul of Lawrence's and Mailroom Supervisor Cecil's policy on incoming packages. (Doc. 12, pp. 1-2, 14-19, Ex. 1A1-1D). Brookhart authorized the practice of rejecting items arriving in cardboard boxes. (Doc. 12, pp. 7, 16, 40, Ex. 1B, 4B). Cecil never notified Plaintiff of the rejection of his books, thus he had no opportunity to protest until learning of the issue from his uncle. (Doc. 12, pp. 1-2, 14-19, 61-66, Ex. 1A1-1D, 7A1-7D).

In August 2019, a package containing a book from Plaintiff's aunt was rejected for "foreign substance on book – not allowed" pursuant to Cecil's policy. (Doc. 12, pp. 7, 46-50, Ex. 5A1-5D). Months later, it was determined that the "foreign substance" was merely water which had dried.

A January 2020 personal letter to Plaintiff from his uncle was rejected, again without any notice to Plaintiff, pursuant to Cecil's policy because the envelope contained labels. (Doc. 12, pp. 2-3, 8, 67-68, 72-75, 79-80, Ex. 8A1-8A2, 9A1-9C, 11A1-11B). Another package from the Downriver Genealogical Society was returned because it bore an address label. (Doc. 12, pp. 3, 67-70, Ex. 8A1-8C). Cecil's rejection of cardboard packaging and mail containing labels violates Plaintiff's First Amendment rights to freedom of speech and to read.

Several hardcover books which were delivered to Plaintiff in 2019 had their dust jackets removed, again without prior notice, pursuant to Cecil's policy. Plaintiff later learned this had been policy at Lawrence since 2001. The dust jackets' destruction devalued the books and deprived Plaintiff of his due process rights. (Doc. 12, pp. 3-4, 8, 14-16, 31-37, Ex. 1A1-1B, 3A1-3F).

Brookhart ratified Cecil's prohibition of the dust jackets. (Doc. 12, pp. 8-9, 22, 49, Ex. 2B, 5C).

Since January 2019, Cecil has charged Plaintiff seven times for first class shipping for books, when Plaintiff requested the material be mailed out at "library mail" or "media mail" rates. The higher first-class cost has deprived him of his property without notice or due process. (Doc. 12, pp. 4-5, 9, 31-37, 54, 69, 81, Ex. 3A1-3F, 6C, 8B, 12A1). Brookhart is aware of and supports the policy, which is set forth in the Inmate Orientation Manual, requiring all offender mail to be sent at the first-class rate. (Doc. 12, pp. 5, 9, 14, 31-37, Ex. 1A1, 3A1-3F). While Plaintiff was incarcerated at Menard Correctional Center ("Menard"), he was permitted to use media or library mail rates for outgoing books. (Doc. 12, pp. 5, 56-57, Ex. 6D1-6D2). Defendants' denial of those services at Lawrence financially punishes Plaintiff, violates his Fourteenth Amendment rights to notice and equal protection, and violates his First Amendment rights. (Doc. 12, pp. 5, 8-9).

In May 2019, a book ("Ga till Amerika: The Swedish creation of an ethnic identity for Worcester, Massachusetts") Plaintiff ordered from Amazon.com was never received, forcing him to reorder it. (Doc. 12, p. 5). When the replacement book arrived, Cecil ordered it to be reviewed by the Publication Review Committee; it was finally approved and delivered to Plaintiff five weeks later. (Doc. 12, pp. 6, 20-30, Ex. 2A1-2J). The delay and loss of the original order violated Plaintiff's right to read.

In May 2019, Plaintiff mailed a settlement agreement for a pending lawsuit to an Illinois Assistant Attorney General ("AG"), to be sent out in a self-addressed stamped envelope supplied by the AG. The document was never delivered because a mailroom employee, pursuant to Cecil's policy, seized and destroyed the envelope and its contents, violating Plaintiff's freedom of speech. (Doc. 12, pp. 6, 28-30, Ex. 2H-2J).

In March and June 2019, two of Plaintiff's annuity checks from Pacific Life Insurance

3

Company ("Pacific") were received at Lawrence but never forwarded to him or deposited to his trust account. Pacific sent a third check on July 23, 2019; Cecil delayed crediting Plaintiff's account with those funds until August 15, 2019. (Doc. 12, pp. 6-7, 38-45, Ex. 4A1-4G). Cecil thus violated Plaintiff's First Amendment right to receive correspondence and his due process right. Another check from Pacific disappeared in June/July 2020; Plaintiff instructed Pacific to send a replacement check c/o Brookhart. Plaintiff was not notified of its receipt until six days after the new check arrived. (Doc. 12, pp. 10, 81-87, Ex. 12A1-12F). Plaintiff blames unnamed mailroom staff for incompetence resulting in the disappearance of multiple checks mailed by Pacific as well as the loss of his "Ga till Amerika" book and destruction of his outgoing legal mail to the AG. (Doc. 12, p. 10).

Plaintiff seeks injunctive relief including an order requiring Defendants to stop withholding, destroying, or rejecting his incoming mail and publications, even those that arrive in cardboard boxes or with labels affixed, and to give him prior notice before incoming material is held or destroyed. (Doc. 12, pp. 11-13). He also seeks reimbursement for excess first-class postage and for lost/destroyed property, as well as compensatory and punitive damages. (Doc. 12, p. 13).

## Discussion

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1: First Amendment claim against Cecil, Brookhart, and the John/Jane Doe mailroom staff for depriving Plaintiff of incoming books/publications which were rejected based on the nature of their packaging and/or mailing labels and/or had a "foreign substance" on the item.

Count 2: First Amendment claim against Cecil, Brookhart, and the John/Jane Doe mailroom staff for depriving Plaintiff of incoming personal correspondence because of mailing label(s) on the envelopes.

4

Count 3:    Fourteenth Amendment due process claim against Cecil and Brookhart for depriving Plaintiff of incoming books/publications and mail without notice or the opportunity to challenge the actions.

Count 4:    Fourteenth Amendment due process claim against Cecil and Brookhart for destroying dust jackets on incoming hardcover books, thus lowering their value, without notice to Plaintiff.

Count 5:    Fourteenth Amendment due process and equal protection claims, and First Amendment claim, against Cecil and Brookhart for denying Plaintiff the ability to mail printed material at the lower "library mail" or "media mail" rates, which Plaintiff was permitted to do at Menard.

Count 6:    First Amendment claim against Cecil and the John/Jane Doe mailroom staff for losing/destroying his "Ga till Amerika" book and then delaying the delivery of its replacement.

Count 7:    First Amendment claim against Cecil and the John/Jane Doe mailroom staff for destroying Plaintiff's outgoing legal mail because it was contained in a stamped, self-addressed envelope to the Assistant Attorney General.

Count 8:    First Amendment claim against Cecil, Brookhart, and the John/Jane Doe mailroom staff for losing/failing to deliver his annuity checks from Pacific Life Insurance Co. and delaying his receipt of the annuity funds.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

## Count 1

Plaintiff's claim that the rejection of his incoming publications for packaging reasons and alleged "foreign substance" contamination violated his rights under the First Amendment shall proceed for further review against Cecil, Brookhart, and the John/Jane Doe mailroom staff. "[T]he

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

5

arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)). *See also King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (the First Amendment protects the freedom to read as well as to speak). Further factual development will be necessary to determine whether the policy/practice of rejecting Plaintiff's books based on their packaging or contamination "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Additionally, Plaintiff must identify the John/Jane Doe mailroom staff by name before his claims may proceed against this Defendant.

**Count 2**

The ability of prisoners to communicate with outsiders through the U.S. mail enjoys substantial protection. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (First Amendment "applies to communications between an inmate and an outsider"). Prisoners have a First Amendment right both to send and receive mail in communication with private individuals outside prison, as well as to correspond with the courts and attorneys. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). However, this right does not preclude prison officials from examining mail to ensure that it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). Defendants' rejection of Plaintiff's incoming mail because of mailing label(s) on the envelope(s), like the claim in Count 1, must be reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89-91. Count 2 shall also proceed against Cecil, Brookhart, and the John/Jane Doe mailroom staff.

**Counts 3 and 4**

Plaintiff's due process claims for deprivation of his incoming books/publications and destruction of the dust jackets without advance notice shall be dismissed. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of property *without due process of law*; if the state provides an adequate remedy, Plaintiff cannot maintain a civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); *see* 705 ILL. COMP. STAT. 505/8 (2018). Because Plaintiff may have the opportunity to seek financial compensation in a Court of Claims action,[3] his Fourteenth Amendment claims in Count 3 and Count 4 fail.

**Count 5**

For the same reason discussed under Counts 3 and 4, Plaintiff's due process claim for being forced to pay higher first-class postage rates fails as a constitutional claim, because there is a process to seek post-deprivation reimbursement in the Illinois Court of Claims. Additionally, it appears that Plaintiff would have had prior notice of the first-class mail policy as he acknowledges it was included in the Inmate Orientation Manual.

Plaintiff also fails to state a viable equal protection claim based on the differing policies on outgoing mail rates between Lawrence and Menard. A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408,

---

[3] The Court expresses no opinion on whether a Court of Claims action by Plaintiff for the incidents outlined in Counts 3, 4, or 5 would be timely at this juncture.

7

415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). Discriminatory purpose "implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango*, 681 F.2d at 1104). Plaintiff's allegations do not indicate that a certain group of inmates was singled out for adverse treatment. Rather, they reflect that prison administrators have discretion to implement policies which may vary from those in other institutions. The Constitution does not require the state to provide identical privileges or amenities to all inmates housed in its various prisons. "[A] mere inconsistency in prison management" does not necessarily demonstrate an equal protection violation. *See Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978).

Finally, Plaintiff fails to state a cognizable First Amendment claim for the rule requiring inmates' outgoing printed material to be sent at the more expensive first-class rate, rather than at the cheaper "library mail" or "media mail" rates. He does not allege that he was prohibited from sending books/publications out of the prison; the only harm to him was that he was charged a higher cost for doing so. This alleged financial harm is indistinguishable from the due process claim already discussed. Giving the same claim an additional "First Amendment" label does not transform it into a viable constitutional claim. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"). Count 5 shall be dismissed in its entirety.

### Count 6

This First Amendment claim for deprivation and delayed receipt of Plaintiff's "Ga till Amerika" book may proceed at this time. The Court notes, however, that the loss or destruction of the first copy Plaintiff ordered may not amount to a First Amendment violation if it was due to mere negligence on the part of the John/Jane Doe mailroom staff. A defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

### Count 7

An inmate's legal mail is entitled to greater protections than ordinary mail, because of the potential for interference with the prisoner's fundamental right of access to the courts. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). *See also Bounds v. Smith*, 430 U.S. 817 (1977). That said, Plaintiff does not allege that the single incident of destroying his outgoing settlement agreement document because he attempted to send it in a stamped, self-addressed envelope caused any detriment to his ability to litigate the matter. An inmate has no constitutional claim for interference with legal mail unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996). Delay alone does not constitute a detriment to the ability to litigate; instead, actual prejudice to specific litigation must be shown. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Further, "isolated incidents of interference with legal mail" may not state a constitutional violation without a showing of "a systematic pattern or practice of interference," *see Bruscino v. Carlson*, 654 F. Supp. 609, 618 (S.D. Ill. 1987). For these reasons, the First Amendment claim in Count 7 will be dismissed without prejudice.

**Count 8**

Here, Plaintiff claims that his First Amendment right was violated by the repeated loss of his incoming mail containing his annuity payment checks. With respect to general mail communications between an inmate and an outsider, a valid First Amendment claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ("Allegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999); *Sizemore v. Wiliford*, 829, F.2d 608, 610 (7th Cir. 1987))). Plaintiff describes what may be considered "repeated occurrences" of the denial of his right to receive mail from Pacific Life Insurance Company. On this basis, his First Amendment claim in Count 8 for interference with his mail may proceed against all Defendants.

**John/Jane Doe Defendants**

Plaintiff is responsible for conducting discovery (informal or formal) aimed at identifying the unknown "John/Jane Doe" Defendant(s), in accordance with the discovery order that will be entered by the Court. Once the names of the unknown Defendant(s) are discovered, Plaintiff must file a motion to substitute the newly identified Defendant(s) in place of the generic designations in the case caption and throughout the Complaint.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 3, 4, 5, and 7,** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 1, 2, and 8** against Cecil, Brookhart, and

the John/Jane Doe mailroom staff, and **COUNT 6** against Cecil and the John/Jane Doe mailroom staff survive preliminary review pursuant to 28 U.S.C. § 1915A and shall proceed for further consideration.

The Clerk of Court shall prepare for Defendants **CECIL** and **BROOKHART**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 12), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the

costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 3, 2020**

> *s/ Reona J. Daly*
> **REONA J. DALY**
> **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.