IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NEIL LOFQUIST, M04121,     )
                           )
     Plaintiff,          )
                           )
     v.               )      Case No. 20-cv-169- RJD
                           )
HEATHER CECIL and DEE DEE     )
BROOKHART,              )
                           )
     Defendants.       )

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendant Brookhart's Motion for Summary Judgment.  Doc. 63.  Plaintiff filed a Response.  Doc. 68.  As explained further, Defendant's Motion is DENIED.

## Background

Plaintiff, an inmate of the Illinois Department of Corrections, filed this pro se lawsuit pursuant to 42 U.S.C. §1983.   He alleged that a myriad of problems related to incoming mail at Lawrence Correctional Center ("Lawrence) violated his First Amendment rights. Defendant Brookhart was the warden at Lawrence during the relevant time.   Plaintiff alleged that Defendant Cecil (who does not move for summary judgment) was the mailroom supervisor, but written discovery reflects that Defendant Cecil's official title was an "Office Assistant II."

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Analysis

Defendant rests her summary judgment motion on one argument: that Defendant Brookhart was not personally involved in any of Plaintiff's mail problems.[1] However, a supervisor can be liable in a §1983 violation for the conduct of others if she knew about the conduct, and "facilitated, approved, condoned, or turned a blind eye" to a Constitutional violation. *Kemp v. Fulton Cty.*, 27 F. 4th 491, 498 (7th Cir. 2021). As explained further, the record before the Court (Plaintiff's deposition, documents submitted by Plaintiff in response to Defendant Brookhart's deposition, exhibits to Plaintiff's original and First Amended Complaints, and some of Defendants' written discovery responses) does not reflect that summary judgment can be granted in favor of Defendant

---

[1] Defendant Brookhart also raises the qualified immunity issue, but her argument relies on the Court finding that she was not involved in the processing of Plaintiff's mail. As further explained in this Order, Defendant Brookhart has not properly supported that argument.

Brookhart because she has not properly supported her arguments pursuant to Federal Rule of Civil Procedure 56.

> **Count I:** **First Amendment claim against both Defendants for depriving Plaintiff of incoming books/publications which were rejected based on the nature of their packing and/or mailing labels and/or the presence of a "foreign substance."**

In 2019, Plaintiff's uncle sent some books to him, but "they were sent right back." Doc. 64-1, pp. 12, 18.   Plaintiff received a notification that the books were returned to his uncle "due to packaging" because of a policy related to "diamond dust" and "corrugated box stuff." *Id.*, p. 18.   Plaintiff's uncle "sent them in a packet." *Id.*, p. 18.   Plaintiff never actually saw the packaging or the books from his uncle. *Id.*, pp. 18-19.   Plaintiff submitted a grievance in July 2019 on this issue. Doc. 66, p. 14.   The response from his counselor stated "per IDOC website envelopes padded with gray diamond dust and cardboard boxes mailed from family and friends will not be accepted and will be [returned to sender] without being opened." *Id.* A letter from Plaintiff's uncle indicates that he tried to send Plaintiff a second package of books, but it was also returned with a message that stated "diamond dust padded envelopes and cardboard boxes will not be accepted." Doc. 12, p. 63.

On August 9, 2019, Plaintiff's aunt sent him a book. Doc. 64-1, p. 12.   The prison "rejected the book because they identified [a] foreign substance on the book." *Id.*   Upon Plaintiff's request, the prison "transferred [the book] over to the property department so they could—so I could review it." *Id.*, p. 13;   Doc. 66, p. 28.   Plaintiff testified that he "held the book in my hand….and the property supervisor who gave me the book, he was like it doesn't smell like anything.   It looks like it's wet….And that's how it appeared to me as well." Doc. 64-1. Plaintiff further testified that ultimately, "it was determined that it was---the foreign substance was nothing

more than water." *Id.*, p. 12.   The record before the Court is silent as to whether Plaintiff was ever able to read the book.   From Plaintiff's grievance records, and e-mails among staff produced in discovery, it appears that the prison lost the book before or after the property review was complete.   Doc. 66, pp. 26-34.

Through written discovery, Plaintiff asked Defendant Brookhart to identify the "procedures that were followed by Lawrence employees regarding the receipt and handling of questionable mail containing 'foreign substances.'"   Defendant Brookhart responded "I do not know what procedures were followed at Lawrence Correctional Center [regarding foreign substances] because I do not work in the mailroom.   However, the mailroom staff at Lawrence Correctional Center follow the policies and procedures of the facility."   Doc. 64-2, p. 3. This non-sensical response-relied upon by Defendant Brookhart to support her motion for summary judgment-provides no information as to whether Defendant Brookhart knew about how Plaintiff's mail was processed.   If Defendant Brookhart does not know what procedures were followed in the mail room, how does she know that the mailroom staff follows the prison's policies and procedures? *Were* there policies and procedures at Lawrence regarding foreign substances on mail?   Defendant Brookhart also cited Institutional Directives in her Response, but none of those Directives address foreign substances on mail.   Doc. 59, pp. 12-23.   Defendant Cecil answered this same interrogatory and provided a nearly identical response.   *Id.*, p. 8.

The Court acknowledges that it is unlikely the Warden was involved in the day-to-day processing of mail at Lawrence Correctional Center.   Certainly, none of the evidence relied upon thus far by Plaintiff reflects any involvement by Warden Brookhart in his mail.[2]   Regardless, as

---

[2] None of the evidence before the Court reflects that Heather Cecil played any role in processing or rejecting or otherwise handling Plaintiff's mail, but she does not move for summary judgment.

the movant, Defendant carries the burden of establishing an absence of a genuine dispute as to whether Warden Brookhart was personally involved in the processing of Plaintiff's mail.   She apparently has knowledge that the staff who work in the mailroom follow the prison's policies and procedures, so a jury could infer that she knew how they were processing Plaintiff's mail.

While Defendant Brookhart has failed to properly support her argument, the Court questions why she did not raise another issue: whether the evidence, reflected in the light most favorable to Plaintiff, establishes that his First Amendment rights were violated.   Regardless of any policy at Lawrence that pertained to foreign substances on books and/or their packaging, and regardless of who was actually involved in processing the packages from Plaintiff's aunt and uncle, the record does not reflect "a continuing pattern of disregard for [Plaintiff's] First Amendment right to read and receive [most] publications."   *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987).   For example, Plaintiff timely received books from amazon.com in 2019.   Doc. 1, p. 26.

Throughout Plaintiff's grievance records, prison officials refer to the IDOC policy of returning cardboard boxes or envelopes padded with "gray diamond dust" from "family and friends." It seems likely that this policy is "reasonably related to legitimate penological interests", but Defendants do not raise this argument.   *Van den Bosch v. Raemisch*, 658 F.3d 778, 785-86 (7th Cir. 2011) ("while the burden of persuasion is on the prisoner to disprove the validity of a regulation…defendants must still articulate their legitimate governmental interest in the regulation") (internal citations and quotations omitted).   As far as the book from Plaintiff's aunt, there is no evidence that the book was "intentionally never delivered"; instead, the record reflects "an isolated instance of loss or theft"-not a First Amendment violation.   *Sizemore*, 829 F.2d at 610.   *Id*.   In any event, Defendants do not raise these issues and therefore Count I will proceed to trial.

**Count VIII:   First Amendment claim against Defendants for losing/failing to deliver his annuity checks from Pacific Life Insurance Co. and delaying his receipt of the annuity funds.**

Once a year, Plaintiff receives an annuity check from Pacific Life Company.   Doc. 64-1, p. 10.   In 2019, Pacific Life Company tried to send Plaintiff two checks that he never received; on the third attempt, Plaintiff received the annuity check.   *Id*.   Again in 2020, Pacific Life Company tried to send Plaintiff two checks that he never received, but on the third attempt, Plaintiff received the check.   *Id*.   Plaintiff does not have proof that the first two checks (in either years) were actually delivered to Lawrence, but he does have letters from Pacific Life Company stating that they mailed the letters to him at Lawrence.   Doc. 66, pp. 21, 22, 42, 44.

The record before the Court is silent as to whether the prison actually received the four missing checks, but because Pacific Life Company mailed the checks (and other correspondence) to Lawrence, the Court could reasonably infer that the checks reached the prison.   Assuming the checks did, in fact, reach the prison, the record is also silent as to what happened to them and who was involved.   Again, Defendant Brookhart has failed to meet her burden-that could have been met with a short, plain affidavit-of establishing that she was not involved nor turned a blind eye to the processing of Plaintiff's mail and/or checks.    Count VIII also proceeds to trial against both Defendants.

**IT IS SO ORDERED.**

**DATED:   March 5, 2024**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**
